## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AJILON PROFESSIONAL           *
STAFFING, LLC
                              *
Plaintiff,
                              *
v.                                        Civil Action No.
                              *

JOSHUA KUBICKI, et al.,       *

Defendants.                   *

\*      \*      \*      \*      \*      \*      \*

## MOTION FOR TEMPORARY RESTRAINING ORDER AND
## FOR PRELIMINARY INJUNCTION

Plaintiff Ajilon Professional Staffing, LLC ("Ajilon") respectfully moves

this Court for the immediate entry of a temporary restraining order and for preliminary

injunction pursuant to Federal Rule of Civil Procedure 65. The basis for this motion is

that Ajilon will sustain irreparable harm if Defendants are not enjoined from

misappropriating and misusing Ajilon's confidential and trade secret information in

violation of the District of Columbia Uniform Trade Secrets Act, in addition to

Defendants' confidentiality and non-compete agreements, as is more fully explained in

the memorandum in support and the Complaint and declarations filed contemporaneously

herewith.

Ajilon requests relief based on the grounds that are set forth in the

Declarations of Bill DeMario and John Mullenholz, attached to the accompanying

memorandum as Exhibits A and B, respectively.

WHEREFORE, Ajilon respectfully prays that this Court enter an Order that:

1.    All Defendants be ordered to show cause on July 27, 2007 why they should not be immediately enjoined and restrained, directly or indirectly, and whether alone or in concert with others, until further Order of this Court, from doing any of the following:

a.    using any Ajilon trade secrets, customer lists or business information to approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of Ajilon, in an attempt to: (i) enter into any business relationship with a client or customer of Ajilon, or (ii) reduce or eliminate the business such client or customer conducts with Ajilon;

b.    divulging, disclosing or using any Ajilon confidential information or trade secrets (as defined in the Employment Agreements signed by Defendants), including information regarding Ajilon clients, customers, employees, qualified personnel, business affairs, information, relationships, accounts, practices, procedures and dealings;

2.    Defendants be ordered to show cause on July 27, 2007 why they should not be immediately enjoined and restrained, directly or indirectly, and whether

alone or in concert with others, until further Order of this Court, from doing any of the following:

    a.    approaching, contacting, soliciting or inducing any individual, corporation or other entity which is a client or customer of Ajilon, in an attempt to: (i) enter into any business relationship with a client or customer of Ajilon, or (ii) reduce or eliminate the business such client or customer conducts with Ajilon; and

    b.    approaching, contacting, soliciting or inducing any person who is an Ajilon employee to leave the employ of Ajilon.

3.    Discovery shall commence immediately, with depositions *duces tecum* occurring on an expedited basis beginning July 25, 2007, provided that they are noticed at least two (2) business days in advance.

4.    The court schedule a hearing on Plaintiff's application for preliminary injunction as soon as practicable.

Respectfully submitted,

Schnader Harrison Segal & Lewis LLP

By:       /s/   Benjamin W. Hahn
Benjamin W. Hahn (Bar No. 446270)
2001 Pennsylvania Ave. N.W., Suite 300
Washington, DC 20006-1825
Telephone: (202) 419-4242
Email: bhahn@schnader.com

Counsel for Plaintiff Ajilon Professional Staffing, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AJILON PROFESSIONAL       *
STAFFING, LLC

      *

Plaintiff,

      *

v.                    Civil Action No.

      *

JOSHUA KUBICKI, et al.,       *

Defendants.       *

*    *    *    *    *    *    *

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION

Ajilon Professional Staffing, LLC ("Ajilon"), by its undersigned attorney, respectfully submits this memorandum of law in support of its motion for a temporary restraining order and preliminary injunction.

## I.    STATEMENT OF FACTS

Ajilon respectfully refers the Court to the accompanying Complaint and declarations, filed herewith, for a complete statement of facts supporting Ajilon's motion for a temporary restraining order.  In essence, Ajilon alleges that Defendants have misappropriated trade secrets; breached their post-employment contractual obligations; tortiously interfered with business and contractual relations; breached their fiduciary duty and duty of loyalty; and have received and will continue to receive unless enjoined unjust enrichment at the expense of Ajilon, who has been irreparably harmed by Defendants'

unlawful activity.  Unless immediately enjoined, Defendants will continue to engage in their illegal conduct and will cause further irreparable harm to Ajilon.


## II.    ARGUMENT

When reviewing petitions for interlocutory injunctive relief, the Court must look to a four-prong test.  This test requires the Court to consider (1) whether plaintiffs have demonstrated that they are likely to prevail on the merits of one of their claims; (2) whether plaintiffs have shown that they would be irreparably harmed if injunctive relief is not awarded; (3) the balance between the hardship to the defendants if injunctive relief is granted and the hardship to the plaintiff if injunctive relief is not granted; and (4) whether awarding the relief is in the public interest.  *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002); *Jacksonville Port Authority v. Adams*, 556 F.2d 52, 57 (D.C. Cir. 1977).

"The two most important factors are probability of irreparable injury to the plaintiff without a decree and likelihood of harm to the defendants with a decree." *Ancora Capital and Mgt. Group, LLC v. Gray*, 2003 U.S. LEXIS 56 at *6 (4th Cir. 2003). If the balance between the two factors tips in favor of the plaintiff, "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." *Id.*, quoting *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).  *See also Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 813 (4th Cir. 1992) (when the balance of harms "tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the ***plaintiff*** has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them fair

grounds for litigation and thus for more deliberate investigation."). Moreover, in applying this test, district courts "employ a sliding scale under which a particularly strong showing in one area can compensate for weakness in another." *Sociedad Anonima Vina Santa Rita v. Department of the Treasury*, 2001 WL 1804108, at *6 (D.D.C. Aug. 13 2001) (quoting *City Fed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

In this case, Ajilon is entitled to its request because (1) the harm Ajilon will suffer if injunctive relief is not granted far outweighs the harm Defendants will suffer if injunctive relief is granted; (2) Ajilon has raised "grave or serious" questions going to the merits of this case; and (3) the public interest favors the issuance of an injunction.

### A.    The balance of hardships tips decidedly in favor of Ajilon.

If an injunction is not granted, Ajilon will suffer grave irreparable harm in the form of damage to its business reputation, loss of goodwill, loss of clients, and loss of employees. Defendants will continue to solicit Ajilon's clients through the use of Ajilon's client lists and the contacts Defendants made with these clients while employed by Ajilon. Ajilon will lose clients, and this loss of business will make it more difficult for Ajilon to recruit and hire new employees and qualified personnel. Monetary damages alone cannot fully compensate a loss of this sort, nor can they protect Ajilon from the continuation of Defendants' wrongful use of Ajilon's trade secrets and confidential information.

In contrast, Defendants will not be harmed if an injunction is granted. Ajilon is merely asking Defendants to abide by their contractual obligations. Defendants are fully aware of the commitment they made to Ajilon, which is fully enforceable.

Ajilon is seeking to protect its trade secrets, which are entitled to protection under the District of Columbia Trade Secrets Act; the business relationships it has invested a great deal of time, effort and money building; and its ability to attract the top-notch staff that the competitive market demands.

**B.    Ajilon has raised "grave or serious questions" going to the merits of its case.**

In light of all of the reasons set forth fully in Ajilon's Complaint and accompanying affidavits, filed herewith, Ajilon has raised questions "going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and this for more deliberative investigation."  *Direx Israel*, 952 F.2d at 813.  Ajilon has presented compelling evidence that Defendants have illegally used Ajilon's trade secret information in violation of the District of Columbia Trade Secret Protection Act and violated the terms of their Employment Agreements with Ajilon, which included fully enforceable confidentiality and non-compete clauses.

**C.    The public interest favors the issuance of the injunction.**

In this case, the Court will serve the public interest by granting an injunction because the public has a deeply rooted interest in protecting trade secret client lists and other confidential information.  In fact, this interest is reflected in the very adoption of the District of Columbia Trade Secret Act.  "The public has an interest in preventing unfair competition, commercial piracy, misleading solicitations….The public has no interest in destroying contracts, rewarding theft, and encouraging unethical business behavior."  *Morgan Stanley DW Inc. v. Rothe*, 150 F.Supp.2d 67, 79 (D.D.C. 2001)(quoting *IDS Life Ins. Co. v. Sun America, Inc.*, 958 F.Supp. 1258, 1282 (N.D. Ill.

1997).  The Court also has an interest in seeing the terms of a reasonable contract enforced.  *See Sagalyn v. Foun. for Pres. of Georgetown*, 691 A.2d 107 (D.C. 1997).

**III.    CONCLUSION**

        For the reasons stated above, Ajilon requests that the Court issue a temporary restraining order and preliminary injunction of the type requested in its accompanying motion.

Respectfully submitted,

Schnader Harrison Segal & Lewis LLP

By:    _____/s/    Benjamin W. Hahn_____
       Benjamin W. Hahn (Bar No. 446270)
       2001 Pennsylvania Ave. N.W., Suite 300
       Washington, DC 20006-1825
       Telephone: (202) 419-4242
       Email: bhahn@schnader.com

Counsel for Plaintiff Ajilon Professional Staffing, LLC

Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AJILON PROFESSIONAL STAFFING, LLC | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Civil Action No. |
| | * | |
| JOSHUA KUBICKI, et al., | * | |
| | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*

## <u>DECLARATION OF WILLIAM DEMARIO</u>

I, William DeMario, under the penalties of perjury, declare as follows:

1.      I am the Chief Operating Officer of Ajilon Professional Staffing, LLC, Plaintiff in the above-styled and captioned matter.

2.      I make this affidavit in support of Plaintiff's Motion for a Preliminary Injunction.

3.      I am over the age of 18 and am competent to testify based on personal knowledge as to the matters described in this affidavit.

4.      In this Declaration, I am providing evidence relating to the following factual issues in this dispute: (a) Ajilon's business; (b) Background on Ajilon's protection of its proprietary business information and trade secrets; (c) Ajilon's standard employment agreements and the restrictive covenants contained in those agreements; (d) the hiring and employment of each of the defendants, including a description of their employment agreements with Ajilon; (e) the trade secrets known to the defendants; (f) the circumstances of the resignations of each of the

defendants; (g) current conduct of the defendants that violates Ajilon's contractual rights or that is otherwise wrongful; and (h) the need for injunctive relief to prevent further injury to Ajilon resulting from that conduct.

5.     **Ajilon's Business**.   Ajilon Professional Staffing is a leading specialty staffing and recruiting services firm and is part of the Adecco Group, which is the world's largest human resource solutions provider.

6.     The North American professional staffing division has three focus areas: Ajilon Finance, Ajilon Office and Ajilon Legal.

7.     Ajilon Finance specializes in the recruitment and the temporary and permanent placement of accounting, finance and bookkeeping professionals.

8.     Ajilon Office offers clients executive and administrative professionals on a temporary and permanent basis.

9.     Ajilon Legal recruits and places candidates in a wide range of specialized positions, including attorneys, paralegals and legal support professionals.   Ajilon Legal also provides staffing of client projects by supplying teams of contract attorneys, paralegals and other support professionals.

10.     A major market for Ajilon is the Washington, D.C. area, which is comprised of Washington, D.C. proper, suburban Maryland south and west of Baltimore, and Northern Virginia.

11.     Ajilon has had a significant presence in the Washington legal placement market for a number of years.  Its market position has been enhanced by two strategic acquisitions in which it assimilated the businesses of legal placement companies Co-Counsel, Inc. and StaffWise, Inc.

12.    The Washington operation has dozens of clients and hundreds of professionals available for placement.

13.    Ajilon is part of the publicly held company Adecco, S.A.

14.    **Ajilon's Protection of Proprietary Information and Trade Secrets**.  Ajilon goes to great expense and effort to protect proprietary information and trade secrets related to its business.

15.    Among those efforts are the following:

   a.  Every full-time employee is required to execute a confidentiality and nondisclosure agreement as a condition of employment.  There are no exceptions to this requirement.

   b.  Ajilon's employee handbook contains provisions advising employees of the proprietary and confidential nature of certain business-related information and records, and further requires each employee to maintain the confidentiality of that information and those records.

   c.  Ajilon has, in the past, taken legal action to preserve trade secrets and proprietary information from misappropriation or wrongful disclosure.

   d.  Client and prospective client information is specifically identified as constituting confidential information and as a trade secret of Ajilon.

   e.  Information relating to client contacts, leads, contracts, pricing, margin, staffing, candidates for placement, individual attorneys or other professionals available for placement, and the like, is kept in confidential databases on password-protected computer files.  All employees are prohibited from accessing and using this information for any purpose other than in Ajilon's business interests.

f.  Upon separation from employment, Ajilon employees are required to verify that they have not taken any confidential information in any form, and to reaffirm their commitment to protecting Ajilon's trade secrets.

16.    The foregoing efforts are reasonable, under the circumstances of Ajilon's business operations, to protect the company from unfair competition and from misappropriation of its trade secrets.    They also demonstrate that Ajilon considers the information and records to constitute trade secrets worthy of legal protection.

17.    The client, prospective client, and candidate information is competitively sensitive, is not available to Ajilon's competitors, has been created and maintained at great expense to Ajilon, and is of very significant importance to Ajilon's business.

18.    One of the principal components of a purchase such as the strategic acquisitions of Co-Counsel, Inc. and StaffWise, Inc. is the client and candidate goodwill, relationships and contacts. The legal professional placement industry places a very high value on such relationships. Disruption to those relationships can be catastrophic to a professional service provider such as Ajilon.

19.    For the foregoing reasons, and in the above-described ways, Ajilon seeks to protect its proprietary and confidential information and trade secrets from misappropriation by current and former employees.

20.    **Ajilon's Employment Agreements**.  All Ajilon employees are required, as a condition of employment, to execute an agreement containing provisions designed to protect Ajilon's client, prospective client, employee, and candidate relationships.

21.    Copies of the form of agreement, in blank and as executed by the three defendants in the instant litigation, are attached to the Complaint as Exhibits A, B, C and D.

22.    The form of agreement provides in relevant part as follows:

> The Employee recognizes and acknowledges that he/she has access to the list of Employer's clients and applicants.... The above constitutes the Employer's "Confidential Information," which is a valuable, special and unique asset of the Employer's business.
>
> The Employee will not, during or after the term of his/her employment, use for his/her own purposes such list of the Employer's clients and applicants... In addition, the Employee will not disclose the above list...to any person, member of his family, firm, corporation, association, or other entity, for any reason or purpose whatsoever....
>
> In the event of a breach or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from the following:
>
>> A.    Disclosing, in whole or in part, the list of the Employer's clients...; or
>>
>> B.    Rendering any services to any person,... , firm, corporation, association, or other entity to whom such list...ha[s] been disclosed, in whole or in part, or [is] threatened to be disclosed.
>
> Employee agrees that Employer has invested substantial time and effort in assembling its staff of regular personnel as well as its pool of temporary employees.  During and for a period of one year immediately following the termination of employment with Employer, Employee shall not directly or indirectly solicit Employer's regular or temporary employees for employment with any person or firm other than for Employer, except in connection with permanent placements made in the proper course of Employee's employment with Employer.
>
> For a period of one year immediately following the termination of employment with Employer, Employee shall not directly or indirectly solicit Employer's customers or Employer's applicants for temporary employee assignments or permanent employee placements.  This shall apply to all customers and applicants known to Employee to be Employer's, to those that have applied or done business with Employer within one year before Employee's termination of employment as well as those prospective customers and from whom Employee solicited business while in the employ of Employer.

23.    These provisions are reasonably designed to protect Ajilon's interest in its proprietary information, its business relationships, and its goodwill.

24.     These restrictions do not unreasonably interfere with employee's ability to earn a living or carry on their work after leaving Ajilon.

25.     These restrictions are intended to prohibit an employee from leaving Ajilon and taking clients, prospective clients, active or prospective projects, Ajilon employees and Ajilon contract attorneys and other professionals to engage in competition with Ajilon in the Washington area.

26.     **Ajilon's Employment of Defendants**.  Ajilon employed each of the defendants to work in its Washington, D.C. office.  At the time of his or her employment, each of the defendants signed Ajilon's employment agreement form.  Copies of those documents are attached to the Complaint as Exhibits B, C and D.

27.     Defendant Kubicki personally hired the other two defendants, and was aware that they had signed the same employment agreement form that he had signed.

28.     All three defendants were aware before they became employed by Ajilon that they were agreeing to the terms of the employment agreements, including the restrictive covenants.

29.     All three defendants were given access to proprietary and confidential information and trade secrets of Ajilon in connection with their respective employments, including, but not limited to, the following:

     a.   Client lists, client contact information, and client histories.

     b.   Potential client lists, contact information and histories.

     c.   Client contract terms, including pricing, scheduling, specific requests for individual employees, complaints and resolution of complaints, margins, and discounts.

     d.   Employee lists, including contact information.

     e.   Employee remuneration (in the case of Defendant Kubicki).

f.  Candidate lists, resumes, contact information, salary requirements, placement history, performance reviews, and availability for projects or placement.

g.  Contract professional lists, resumes, contact information, salary requirements, placement history, performance reviews, and availability for projects or placement.

h.  Procedures for responding to requests for proposals and for placements.

i.  Candidates and contract professionals who should not be used because of poor performance.

30.     None of the foregoing information is readily available to competitors of Ajilon unless it is obtained by wrongful means.

31.     Defendants were aware that the foregoing information was and is confidential, proprietary, and competitively sensitive, and that Ajilon treated such information as trade secrets of the company.

32.     **Defendants' Resignations from Employment with Ajilon**.  All three of the defendants voluntarily resigned from their employment positions with Ajilon without cause and with little or no notice.

33.     In the case of Defendant Kubicki, I personally sought to persuade him to remain with Ajilon, and he chose to resign despite those efforts.

34.     At the time of my last meeting with Kubicki on June 20, 2007, he specifically stated "I know I have a noncompete, but I don't know whether Ajilon will choose to enforce it." Therefore, Kubicki knew at the time of his resignation that he was bound by the terms of his employment agreement with Ajilon.  At no time did I give Kubicki any reason to believe that Ajilon would not seek to enforce its rights under the employment agreement.

35.    Shortly after Kubicki's resignation, Defendant Pomykala resigned, effective June 27, 2007.

36.    In like manner, Defendant Danowski resigned effective June 27, 2007.

37.    The three defendants had worked as a team, with Kubicki developing the business opportunities, Pomykala attending to the staffing and oversight of the projects, and Danowski handling the administrative aspects of the operation.

38.    **Wrongful Conduct by Defendants Before and After Resignation**.    Ajilon is now aware that Kubicki and the other defendants had been planning for weeks, and more likely months, to resign abruptly in a concerted manner and to divert Ajilon projects and potential projects to a competitor company, Solomon-Page Group, using Ajilon trade secrets, proprietary information, contacts, and contract professionals.

39.    On information and belief, Kubicki was in discussions both with Solomon-Page Group representatives and contacts at Ajilon's clients weeks or months prior to his departure to have Ajilon work or potential work shifted to Solomon-Page.

40.    On information and belief, Kubicki solicited Pomykala and Danowski to resign from their employment with Ajilon, to go to work for Solomon-Page Group, and to assist him in the wrongful diversion of Ajilon's projects and potential projects.

41.    Kubicki has compromised Ajilon's relationship with Crowell & Moring, a Washington, D.C. law firm that was one of Ajilon's largest accounts.

42.    Immediately prior to becoming employed by Ajilon, Kubicki was employed by the law firm of Crowell & Moring.  Shortly after joining Ajilon, Kubicki succeeded in attracting a large amount of contract attorney staffing assignments from Crowell & Moring, including one of the

largest legal staffing projects ever placed in the Washington, D.C. area. The revenue Ajilon received from Crowell & Moring since Kubicki became an Ajilon employee was substantial.

43.     Pomykala is now the contact person for contract attorneys and professionals seeking assignments in Washington, D.C. on behalf of Solomon-Page Group.

44.     This fact is evidenced by the online advertisement from July 11, 2007, a copy of which is attached to this Declaration as Exhibit A.

45.     Prior to the defendants' resignation from Ajilon and employment at Solomon-Page, Solomon-Page did not, to my knowledge, run such advertisements or make such placements.

46.     **Need for Injunctive Relief**. As a direct result of the abrupt and coordinated resignations of defendants, their employment by a competitor of Ajilon, their use of confidential information and trade secrets belonging to Ajilon, and their engaging in competition and other conduct violative of the terms of their employment agreements, Ajilon has lost significant business opportunities, including work with Crowell & Moring.

47.     My conservative estimate of the losses that Ajilon has sustained to date as a result of defendants' conduct is in excess of $300,000 in gross revenue.

48.     Their wrongful conduct will continue to cause ever-increasing loss of revenue to Ajilon, estimated conservatively at $250,000 per month, if they are permitted to continue in their actions. The current loss rate could be considerably higher, and it is likely to increase unless defendants are enjoined from their actions.

49.     Some of the relationships between Ajilon and its clients, prospective clients, candidates, and employees are reparable, provided defendants are prevented from engaging in their wrongful conduct.

50.     Ajilon has engaged in no action that would justify the conduct of defendants.

I have read the foregoing declaration consisting of 50 paragraphs, and I declare under the penalties of perjury that its contents are true and correct, to the best of my knowledge, information and belief.

William DeMario

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AJILON PROFESSIONAL      *
STAFFING, LLC
     *

Plaintiff,
     *

v.                                 Civil Action No.
     *

JOSHUA KUBICKI, et al.,      *

Defendants.      *

*       *       *       *       *       *       *

## DECLARATION OF JOHN J. MULLENHOLZ

I, John J. Mullenholz, under the penalties of perjury, declare as follows:

1.     I am the Senior Regional Vice-President of the International Projects and Consulting Group of Ajilon-StaffWise Legal, which is an operating unit of Ajilon Professional Staffing, LLC, Plaintiff in the above-styled and captioned matter.

2.     I make this declaration in support of Plaintiff's Motion for a Preliminary Injunction.

3.     I am over the age of 18 and am competent to testify based on personal knowledge as to the matters described in this declaration.

4.     Ajilon Professional Staffing is a leading specialty staffing and recruiting services firm and is part of the Adecco Group, which is the world's largest human resource solutions provider.

5.     The North American professional staffing division has three focus areas: Ajilon Finance, Ajilon Office and Ajilon Legal. I am exclusively involved in the Ajilon Legal operations.

6.      Ajilon Legal places candidates in a wide range of specialized positions including attorneys, paralegals and legal support professionals. Ajilon Legal also provides staffing of client projects by supplying teams of contract attorneys, paralegals and other support professionals.

7.      A major market for Ajilon is the Washington, D.C. area, which is comprised of Washington, D.C. proper, suburban Maryland south and west of Baltimore, and Northern Virginia.

8.      My position involves projects outside of the Washington, D.C. geographic area, but I am familiar with, and have line management responsibility for, all of the Ajilon Legal International Projects and Consulting Group operations in the Washington, D.C. area.

9.      As a result of two strategic acquisitions in which it assimilated the businesses of legal placement companies Co-Counsel, Inc. and StaffWise, Inc., Ajilon has had a significant presence in the Washington legal placement market for a number of years.

10.     In 1980, I founded StaffWise Legal, Inc. and was the sole owner and president of that company until it was acquired by Ajilon in October 2005. StaffWise Legal, Inc. was the first legal staffing company in the Washington, DC area, and is probably the oldest legal staffing company in the country.

11.     Ajilon Legal has dozens of clients and hundreds of professionals available for placement in the Washington area.

12.     Ajilon is part of the publicly held company, Adecco, S.A.

13.     Ajilon goes to great expense and effort to protect proprietary information and trade secrets related to its business.

2

14.    I have read the Declaration of William DeMario with respect to Ajilon's efforts to protect its trade secrets and proprietary and confidential information, and I confirm that his statements are consistent with my experience at Ajilon and with my conduct of operations under my purview.

15.    All full-time employees in my division are required to sign employment agreements that restrict post-employment activities in competition with Ajilon. They also protect Ajilon against misappropriation of trade secrets and other unfair or unlawful use of confidential and proprietary information. I am familiar with the standard agreements signed by the defendants in this litigation, and which are attached to the Complaint as Exhibits A, B, C and D.

16.    The provisions in the defendant's employment agreements are reasonably designed to protect Ajilon's interest in its proprietary information, its business relationships, and its goodwill.

17.    Based upon my experience in the legal staffing industry, these restrictions do not unreasonably interfere with an employee's ability to earn a living or carry on their work after leaving Ajilon.

18.    These restrictions are intended to prohibit an employee from leaving Ajilon and taking clients, prospective clients, active or prospective projects, Ajilon employees and Ajilon contract attorneys and other professionals to engage in competition with Ajilon in the Washington area.

19.    At the time I joined Ajilon in October 2005, defendants were already employees in the Ajilon Washington, D.C. office. To the best of my knowledge, defendant Kubicki was Branch Manager, and Defendants Danowski and Pomykala reported to Kubicki.

20.    I became Kubicki's direct report at or about the beginning of 2007, and I, in turn, reported to another individual and then Bill DeMario, upon that individual's departure from Ajilon Legal.

21.    Kubicki used Ajilon's proprietary systems, its scale and scope of operations, its administrative capabilities, including computer technology developed by Ajilon, its marketing and production facilities, and its many resources, including travel and entertainment reimbursements, to develop client business.

22.    Kubicki was successful in developing business with Crowell & Moring, LLP, and he had one very large project with that firm that, along with continuing business from Crowell & Moring, constituted the majority of the billable work for his division for the period of time that he was employed by Ajilon.

23.    Kubicki created serious friction within various offices of Ajilon by insisting on commissions that would normally go to others in the company, to the detriment of the branch managers and the recruiters working on the projects.

24.    Ajilon management attempted to create new compensation programs for Kubicki, to resolve the friction, but Kubicki ultimately resigned on June 22, 2007.

25.    Shortly thereafter, two Ajilon employees, Defendants Pomykala and Danowski, who worked closely with Kubicki tendered their resignations, effective June 29, 2007.

26.    Pomykala openly stated that he was going to work for Solomon-Page Group.

27.    Danowski would not say where she was going to go to work.

28.    I have seen advertisements placed on the Internet listing potential jobs through Solomon-Page Group in the Washington, D.C. area.  Jon Pomykala is listed as the Solomon-Page Group

4

contact person on those advertisements. To my knowledge, Solomon-Page was not running this type of advertisement prior to Kubicki's joining Solomon-Page.

29. Solomon-Page Group has attempted for a number of years, without great success, to penetrate the Washington, D.C. legal placement services market.

30. Solomon-Page hired a former StaffWise Legal employee from the Washington, D.C. office to work in this area.

31. StaffWise Legal did not take legal action in that instance because there did not appear to be a serious threat that any major business relationships were going to be disrupted.

32. In the present case, however, Solomon-Page's hiring of Kubicki and presumably also Pomykala and Danowski has caused and will continue to cause, very serious problems for Ajilon.

33. Pomykala and Danowski were hired by and worked almost exclusively with Kubicki during their employment with Ajilon.

34. Ajilon is compelled to take action in the instant case not only because the three defendants collectively have diverted and continue to divert significant client relationships and actual and potential projects to Solomon-Page, but also because Solomon-Page appears to believe it can hire Ajilon employees with impunity.

35. For these reasons, Ajilon needs judicial protection and an injunction against Kubicki, Pomykala and Danowski from working for Solomon-Page in the Washington, D.C. area for twelve months, as determined by the court.

I have read the foregoing declaration consisting of 35 paragraphs, and I declare under the penalties of perjury that its contents are true and correct, to the best of my knowledge, information and belief.

John J. Mullenholz

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AJILON PROFESSIONAL STAFFING, LLC | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. |
| | * | |
| JOSHUA KUBICKI, et al., | * | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*

<u>**PRELIMINARY INJUNCTION ORDER**</u>

The court, having reviewed Plaintiff's complaint, motion for injunctive relief, and other pleadings submitted by Plaintiff and Defendants, has held a hearing on the issues, and has determined the following:

1.      Plaintiff has a likelihood of success on the merits of its claims.

2.      Plaintiff demonstrated by competent evidence that it will suffer irreparable harm and loss if Defendants are permitted (a) to convert Plaintiff's confidential information to Defendants' own use or the use of Defendants' current employer, and (b) to solicit Plaintiff's clients, customers or employees or violate a noncompetition agreement.

3.      Plaintiff has no adequate remedy at law.

4.      Plaintiff will suffer greater injury from the denial of preliminary injunctive relief than Defendants will suffer from the granting of relief.

     5.       Granting this preliminary injunction will further the public interest.

**It Is Ordered:**

     1.       A preliminary injunction order is issued, and Plaintiff must post security of $_____ no later than _____, 2007.

     2.       Until further order of this court, Defendants Joshua Kubicki, Kimberly Danowski, and Jon Pomykala are enjoined and restrained, whether alone or in concert with others, including but not limited to any officer, agent, representative, or employee of Solomon-Page Group or any other provider of contract attorney or paralegal placement services, from (a) using or disclosing Plaintiff's confidential information; (b) soliciting or doing business with Plaintiff's clients or customers; (c) soliciting or doing business with Plaintiff's candidates and regular employees; and (d) engaging in the business of legal staffing within a 35-mile radius of Plaintiff's Washington, D.C. office located at 1150 Connecticut Avenue, NW.

     3.       This order remains in effect until this court specifically orders otherwise.

_____
Hon.
Circuit Court Judge