## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AJILON PROFESSIONAL STAFFING, LLC,

Plaintiff

v.

JOSHUA KUBICKI, KIMBERLY DANOWSKI,
and JON POMYKALA,

Defendants.

CASE NO. 1:07-cv-01281-RJL

### SECOND SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
### OF DEFENDANTS IN OPPOSITION TO AJILON'S MOTION
### FOR PRELIMINARY INJUNCTION

Michael A. Schlanger (D.C. Bar No. 88849)
Mark W. Mosier (D.C. Bar No. 974887)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

*Counsel for Defendants Joshua Kubicki, Kimberly
Danowski, and Jon Pomykala*

## <u>TABLE OF CONTENTS</u>

<u>ARGUMENT</u> ................................................................................................................ 1

I.      Unlike *Accounts on Call v. Silverberg*, in Which a New Jersey Court Applied
        New Jersey Law to Deny Injunctive Relief to an Ajilon Affiliate, Ajilon's
        California Case Has No Persuasive Value. .......................................................... 1

II.     Regardless of Whether Ajilon Seeks to Enjoin Defendants From Working in
        Washington, From Soliciting Any of Ajilon's Customers, or From Soliciting
        Three of Its Customers, Ajilon Is Not Entitled to Injunctive Relief Because Its
        Alleged Harm Is Not Irreparable and It Is Unlikely to Succeed on the Merits. ................ 4

<u>CONCLUSION</u>.......................................................................................................... 7

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212 (D.D.C. 1996) .............................5

*Carabillo v. ULLICO Inc. Pension Plan & Trust*, 355 F. Supp. 2d 49 (D.D.C. 2004) ........................................................................................................2, 4, 5

*In re Phoenix Rest. Group, Inc.* 317 B.R. 491 (M.D. Tenn. 2004).....................................2

*Iron Mountain Information Management, Inc. v. Taddeo*, 455 F. Supp. 2d 124 (E.D.N.Y. 2006)........................................................................................................6

*Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001) ..............................7

*Smith, Bucklin & Associates, Inc. v. Sonntagg*, 83 F.3d 476 (D.C. Cir. 1996)...................6

*Violette v. Ajilon Finance*, 2005 WL 2416986 (D.N.J. 2005) .............................................2

### STATE CASES

*Accounts on Call v. Silverberg*, No. C-176-95 (N.J. Super. Ct. Ch. Div. 1995) .............2–4

*Coskey's Television & Radio Sales & Serv., Inc. v. Foti*, 602 A.2d 789 (N.J. Super. Ct. App. Div. 1992) ........................................................................................7

*Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879 (N.J. 1988) ................................................3

*P.C. Help Servs., Inc. v. Wein*, No. C-206-96E (N.J. Super. Ct. Ch. Div. 1996) ...............4

Defendants Joshua Kubicki, Kimberly Danowski, and Jon Pomykala respectfully submit this Second Supplemental Memorandum of Points and Authorities in opposition to the motion of plaintiff Ajilon Professional Staffing, LLC ("Ajilon") for a preliminary injunction. The Court should deny Ajilon's motion both for the reasons stated in defendants' previous memoranda and for those presented at the hearing on the preliminary injunction. Moreover, contrary to Ajilon's claims at the preliminary injunction hearing, the decision from a state court in California provides no basis for granting injunctive relief in this case; nor is there any basis to grant an injunction limited to Crowell & Moring, Mayer, Brown, Rowe & Maw, and Sidley Austin.

## ARGUMENT

I.  **Unlike *Accounts on Call v. Silverberg*, in Which a New Jersey Court Applied New Jersey Law to Deny Injunctive Relief to an Ajilon Affiliate, Ajilon's California Case Has No Persuasive Value.**

The injunction entered by a California court in *Ajilon v. Gould* provides no basis for granting similar relief in this case. At the preliminary injunction hearing, Ajilon provided the Court and defendants with selected filings from that case, but these papers included neither a ruling from the court nor a transcript of the proceedings. These papers therefore are wholly inadequate because they do not establish why the California court concluded that injunctive relief was appropriate in that case.[1]

The California court could have decided that injunctive relief was appropriate for a number of reasons that would be irrelevant here. The court may have granted the injunction without deciding whether Ajilon faced irreparable harm because the defendants failed to contest

---

[1] Nor does the relief granted in that case provide support for the relief requested here. The injunction issued in *Gould* is far from a "wall-to-wall injunction." (Prelim. Inj. Hearing Tr. 10:12.)

this element.  Ajilon, after all, argued in that case that the former employees did "not dispute

Ajilon Finance's showing of irreparable harm."  (*See* Ajilon Reply at 10.)  Or the court may have

concluded that finding irreparable harm is not necessary under California law.  According to

Ajilon's reply brief, "All a party seeking injunctive relief must show is a reasonable likelihood of

prevailing on the merits and an interim harm that outweighs any interim harm to the party against

whom the injunctive relief is sought."  (*Id.* at 6.)  Regardless of whether this accurately states

California law, it clearly is not the law of this Circuit, which always requires irreparable harm.

*See Carabillo v. ULLICO Inc. Pension Plan and Trust*, 355 F.Supp.2d 49, 53 (D.D.C. 2004)

(Leon, J.) ("if a party makes no showing of irreparable injury, the court may deny the motion for

injunctive relief without considering the other factors.").  As a result, *Gould* provides no support

for injunctive relief in this case.

If this Court were inclined to rely on a state court case involving Ajilon,  it should

look to *Accounts on Call v. Silverberg* in which a New Jersey court, applying New Jersey law,

denied injunctive relief in a virtually identical case.  (*See* Mosier Decl. Ex. B.)  In that case,

Accounts on Call  -- a staffing company that is now part of Ajilon[2] -- sought to enjoin employees

who had left Accounts on Call to join Solomon-Page.  As Ajilon has done in this case, Accounts

on Call sought trade secret protection for its database because it "contains client and customer

information, it contains contact individuals with their home and business telephones, . . . [and] a

complete directory of the types of technologies that are in use at various employers and that

candidates are familiar with."  (*Id.* at 7:2-5.)  Accounts on Call, like Ajilon, also argued that its

---

[2]In addition to the reference to Accounts on Call on the Ajilon website (*See* Mosier Supp. Decl. Ex. B), previous cases have also noted the affiliation.  *See, e.g., Violette v. Ajilon Finance*, 2005 WL 2416986 (D.N.J. 2005) (referring to defendants as "Ajilon Finance, formerly, d/b/a Accountants on Call, and Adecco"); *In re Phoenix Rest. Group, Inc.* 317 B.R. 491 (M.D. Tenn. 2004) ("Ajilon Professional Staffing LLC d/b/a Ajilon Finance f/k/a Accountants On Call, Inc.").

customer relationships deserved protection because of the investment the company makes to train novice salesmen. (*Id.* at 5:20-24 ("In the instance of development of existing client relationships, the company in the first instance will hire somebody who has little or no experience in the field and train them, so therefore, the company has made an investment in training.").)[3]

The New Jersey court denied the injunction because Accounts on Call was unlikely to succeed on the merits. New Jersey law was sufficiently clear, according to the court, that a restrictive covenant is not enforceable under these circumstances. The court explained:

> [T]he Court is satisfied that the plaintiff is not likely to succeed on the merits of its claim that [the employee's] post-employment covenant not to compete is enforceable because of the absence of a legally recognizable reason for such a restriction . . . . In regard to this post-employment restriction [sic] covenant of the [employee], the courts and the law look with disfavor upon enforcement of such covenants and will do so only where a recognizable and protectable interest of the employer requires. What interest is there here? In essence, the plaintiff contends that this individual defendant has confidential information. . . .
>
> Is there proprietary information that's protectable under New Jersey law in this matter? This Court does not believe that there is. This Court sees nothing different between the plaintiff's operation from any cold calling solicitation in a number of industries.

---

[3] The New Jersey Supreme Court has clearly held that an employer cannot enforce a restrictive covenant merely because it trained the employee:

> knowledge, skill, expertise, and information acquired by an employee during his employment become part of the employee's person. They belong to him as an individual for the transaction of any business in which he may engage, just the same as any part of the skill, knowledge and information received by him before entering the employment. An employee can use those skills in any business or profession he may choose, including a competitive business with his former employer.

*Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 892 (N.J. 1988).

> Potential customers are readily ascertainable and public information. And it is clear from the record that customers use multiple search firms and it is obvious from the logic of the situation that they will hire the best available applicant, irrespective of who calls.
>
> There is nothing in the record to demonstrate plaintiff's likelihood of success in establishing the confidential or proprietary nature of that customer list that would be required in order for the restraints requested in this matter to be entered.

(*Id.* at 42:21-44:11; *accord id.* Ex. C, at 19 (*P.C. Help Servs., Inc. v. Wein*, No. C-206-96E (N.J. Super. Ct. Ch. Div. 1996) (denying a preliminary injunction because the staffing company was unlikely to succeed in establishing that its customer list was a trade secret)).)

A decision from a New Jersey court, applying New Jersey law, denying an injunction on claims almost identical to those presented here is certainly more persuasive than a California decision granting relief for unknown reasons.

## II.    Regardless of Whether Ajilon Seeks to Enjoin Defendants From Working in Washington, From Soliciting Any of Ajilon's Customers, or From Soliciting Three of Its Customers, Ajilon Is Not Entitled to Injunctive Relief Because Its Alleged Harm Is Not Irreparable and It Is Unlikely to Succeed on the Merits.

Ajilon is not entitled to injunctive relief unless it establishes that it will suffer irreparable injury in the absence of the injunction and that it has some likelihood of succeeding on the merits of its claims. *Carabillo*, 355 F.Supp.2d at 53. These requirements cannot be avoided by limiting the request for injunctive relief to a subset of Ajilon's customers.

When these proceedings began, Ajilon sought injunctive relief to enforce the terms of its restrictive covenants. (*See* Pl.'s Proposed Order for Prelim. Inj., at 2 (filed July 18, 2007).) Defendants' contracts contain a clause prohibiting them from working for a competitor in Washington, and thus Ajilon sought to enjoin defendants from working in Washington. (*Id.*) Although Ajilon still claims that its restrictive covenants are enforceable, it no longer seeks to enforce its contracts as written. Ajilon's more recent proposed order omits the prohibition on

working in Washington; instead, it seeks, among other things, to prevent defendants from

soliciting Ajilon's customers.  (*See* Pl.'s Proposed Order for Prelim. Inj., at 1 (filed Aug. 6,

2007).)

At the preliminary injunction hearing, Ajilon again changed its request, informing

the Court that it would be satisfied with an order prohibiting defendants from contacting three

law firms -- Crowell & Moring, Mayer Brown, and Sidley Austin -- and from speaking to each

other.[4]  (Prelim. Inj. Hearing Tr. 13:16-18.)  Although Ajilon's attempts to narrow its request for

relief are understandable -- narrowing its request helps make patently unreasonable restrictive

covenants appear slightly less unreasonable -- it still must show both that it faces irreparable

harm in the absence of injunctive relief and that it is likely to succeed on the merits of its claims.

*Carabillo*, 355 F.Supp.2d at 53.  Regardless of its willingness to accept a more limited

injunction, Ajilon in not entitled to any relief unless it establishes these necessary elements for an

injunction.  *Id.*

Ajilon has not shown that it will be irreparably harmed if defendants are not

enjoined from obtaining projects from these three law firms.  Ajilon has not claimed that it has

lost Crowell or Sidley Austin as customers.  And even if Ajilon loses business from these

customers, any harm can be remedied by monetary damages: a corporation with approximately

150,000 clients[5] is not irreparably harmed when it loses three of them.  *See Bristol-Myers Squibb*

---

[4] Ajilon has not explained why it is entitled to prevent all communications between its former
employees.  There is no contractual provision that prevents such communications, and if there
were, it certainly would be unreasonable.  Even if trade secrets were at issue in this case, Ajilon
would be limited to enjoining defendants from divulging the trade secrets -- not from continuing
their friendship.

[5] Ajilon's parent, Adecco S.A., reported in its 2006 Annual Report that it places 700,000
temporary employees at approximately 150,000 clients.  (*See* Mosier Supp. Decl. Ex. A at 86.)

*Co. v. Shalala*, 923 F. Supp. 212, 221 (D.D.C. 1996).  Nor can Ajilon's claim of diverted

business establish irreparable harm.  Ajilon has not established irreparable harm with respect to

Sidley Austin because it presented no evidence that Mr. Kubicki has obtained any projects from

Sidley Austin, or that he even has solicited Sidley Austin since he left Ajilon.  As for Crowell

and Mayer Brown, Ajilon presented evidence that Mr. Kubicki currently has projects with these

firms, but it did not establish -- as is its burden -- that enjoining defendants will help Ajilon

regain its relationships with these firms.  *See Smith, Bucklin & Assocs., Inc. v. Sonntagg*, 83 F.3d

476, 481 (D.C. Cir. 1996).

        Ajilon is not entitled to enjoin defendants from doing *future* business with

Crowell, Mayer Brown, and Sidley Austin based solely on its allegation that a "pipeline" project

was diverted while defendants were at Ajilon.  Defendants are no longer in a position to divert

"pipeline" projects because they no longer work at Ajilon.  *See, e.g., Iron Mountain Info. Mgmt.,*

*Inc. v. Taddeo*, 455 F. Supp. 2d 124, 142 (E.D.N.Y. 2006) (diverting business while still

employed by plaintiff "cannot be remedied by the grant of injunctive relief as it is not continuing

conduct").  And Ajilon has offered no evidence that there are projects that were still in the

"pipeline" when defendants were at Ajilon, but which have not been staffed yet.  Based on the

urgency of staffing needs, it is unlikely that any such project exists.  As a result, enjoining

defendants from competing for future projects is not necessary to prevent them from using

information learned while employed by Ajilon.

        Ajilon is unlikely to succeed on the merits of its claims because its customer lists

and customer information are neither confidential nor proprietary.  Ajilon's decision to single out

Crowell and Mayer Brown from its list of customers is especially curious considering that it is

*least* likely to succeed on the merits with respect to these firms.  Mr. Kubicki obtains projects

6

from these two firms based, in large part, on his personal relationships that began before he joined Ajilon.  (*See* Kubicki Decl. ¶¶ 11-12.)  As a New Jersey court explained, "What [an employee] brought to his employer, he should be able to take away. . . .  [The employee's] relationships within the industry were not bought and paid for; they were merely rented during the period of employment."  *Coskey's Television & Radio Sales & Serv., Inc. v. Foti*, 602 A.2d 789, 795 (N.J. Super. Ct. App. Div. 1992).  Similarly, Judge Urbina -- despite enjoining the stock broker from soliciting his former clients -- recognized that pre-existing relationships should be treated differently.  *See Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 74 (D.D.C. 2001) ("The agreement in no way forces the defendant to sever all ties with his friends and family.").  Judge Urbina expressly excluded family members from the injunction and left it to the arbitration panel to determine which of the broker's clients were friends whom he brought to Morgan Stanley.  *Id.* at 78 & n.5.[6]

Ajilon cannot show that it will be irreparably harmed in the absence of an injunction.  Nor has it shown that it is likely to succeed on the merits of its claims.  It therefore is not entitled to injunctive relief, and no amount of reformulating its proposed order can overcome its failure to establish these required elements for an injunction.

## CONCLUSION

For the foregoing reasons and the reasons set forth in defendants' previous memoranda, the Court should deny Ajilon's motion for preliminary injunction.

---

[6] Whether these law firms were Mr. Kubicki's "customers" before he joined Ajilon is beside the point -- Judge Urbina did not consider whether the stock broker had previously invested for his friends and family, and the opinion makes clear that the broker did not receive his securities license until after he had joined Morgan Stanley.  150 F. Supp. 2d at 69.  What matters is the reason why these firms became Mr. Kubicki's customers, which had everything to do with Mr. Kubicki's personal relationships and nothing to do with Ajilon's "trade secrets."

Respectfully submitted,


___/s/  Michael A. Schlanger_____
Michael A. Schlanger (D.C. Bar No. 88849)
Mark W. Mosier (D.C. Bar No. 974887)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291


*Attorneys for Defendants Joshua Kubicki,*
August 10, 2007                      *Kimberly Danowski, and Jon Pomykala*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of defendants' Supplemental

Opposition to Ajilon's Motion for Preliminary Injunction with attachments was served upon:

Benjamin Hahn, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
2001 Pennsylvania Ave N.W., Suite 300
Washington, DC 20006-1825

by electronic filing under the Rules of this Court on this 10th day of August, 2007.


        /s/  Michael A. Schlanger
Michael A. Schlanger