UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
AUG 3 1 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| AJILON PROFESSIONAL, STAFFING, PLC ) ) ) Plaintiff, ) ) v. ) ) JOSHUA KUBICKI, *et al.*, ) ) Defendants. ) ) | Civ. Action No. 07cv1281 (RJL) |

**MEMORANDUM OPINION**
(August **31**, 2007)[#3]

In June 2007, Ajilon Professional Staffing, PLC ("Ajilon") sued three former employees, Joshua Kubicki, Kimberly Danowaski and Jon Pomykala for, *inter alia,* breach of contract, breach of fiduciary duty and violation of the District of Columbia Uniform Trade Secret Protection Act, D.C. Code § 48-501, *et seq.,* after the defendants left Ajilon for one of its competitors, Solomon-Page Group LLC ("Solomon-Page"). Currently before the Court is the plaintiff's motion for a preliminary injunction seeking to enjoin the three defendants from working together and from soliciting business from three of Ajilon's clients.[1]  Upon review of the entire record and the relevant caselaw, plaintiff's motion is DENIED.

---

[1] The Court denied plaintiff's motion for a temporary restraining order at a hearing on July 25, 2007.

1

## I. BACKGROUND

Ajilon is a legal staffing and recruiting services firm that provides contract attorneys, paralegals and legal support professionals on a temporary or permanent basis to law firms throughout the United States. According to the defendants, almost every medium and large-sized law firm in Washington D.C. uses staffing companies. Kubicki Decl. ¶ 10. Law firms generally hire staffing companies only for a specific project and it is commonplace for firms to use multiple staffing companies at the same time. *Id.* As a result, competition among staffing companies is fierce and staffing companies engage in an ongoing effort to anticipate the needs of their existing or prospective clients by frequently inquiring about their needs. *Id.* Moreover, because law firms advertise their staffing needs in order to ensure the best price from staffing firms, the industry is highly transparent. *Id.* As a result, defendants contend, people in the industry know which firms use contract attorneys, what staffing companies work for which firms and when a new project is staffed. *Id.*

Ajilon has sued the defendants alleging that they violated the post-employment restrictive covenants of their employment contracts by leaving Ajilon for one its competitors and misappropriating Ajilon's trade secrets (its client lists) in order to divert Ajilon clients to Solomon-Page.[2] Ajilon subsequently moved for a preliminary injunction

---

[2] According to the plaintiff, the defendants's employment contracts barred the defendants from disclosing client lists, barred Ms. Danowski and Mr. Pomykala from engaging in competitive activities within thirty-five miles of the District of Columbia for one year after leaving the firm, and barred Mr. Kubicki from engaging in competitive activities within *fifty*

seeking to enjoin the defendants from working together at Solomon-Page and from soliciting business from three law firms (i.e. Crowell & Moring[3], Mayer Brown Rowe & Maw and Sidley Austin). Transcript of Preliminary Injunction Hearing ("Transcript"), 13:15-18; 14:5-18. The defendants have opposed the motion arguing that Ajilon is unlikely to succeed on the merits of its litigation, faces no threat of irreparable injury, and that defendants would be seriously injured by the granting of the injunction.

## II. ANALYSIS

### A. STANDARD OF REVIEW

In deciding whether to grant preliminary injunctive relief, the Court must consider: 1) whether there is a substantial likelihood of plaintiff's success on the merits; 2) whether plaintiff would suffer irreparable injury if the injunction is not granted; 3) whether an injunction would substantially injure other interested parties; and 4) whether the public interest would be furthered by the injunction. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir.1998); *Washington Legal Foundation v. Leavitt*, 477 F.Supp.2d 202 (D.D.C. 2007). These factors interrelate on a sliding scale and must be balanced against each other. *Davenport v. International Brotherhood of Teamsters, AFL-CIO*, 166 F.3d 356, 361 (D.C.Cir. 1999); *Dodd v. Fleming*, 223 F.Supp.2d 15, 19 (D.D.C. 2002). However, "[i]f the plaintiff makes a particularly weak showing on one factor...the other

---

miles of *any* Ajilon office for one year after leaving the firm. Compl., Ex. A,B,C,D.

[3] Mr. Kubicki, a former associate at Crowell & Moring, had a number of former colleagues and law school classmates at the firm prior to his joining Ajilon. Kubicki Decl. ¶ 12.

3

factors may not be enough to compensate." *Dodd*, 223 F.Supp.2d at 20 (citing *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C.Cir. 1995), amended on other grounds, 66 F.3d 1226 (D.C.Cir.1995)). Indeed, courts in our Circuit have held that "if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." *Id.* at 20 (citing *CityFed Financial Corp. v. OTS*, 58 F.3d 738, 747 (D.C.Cir. 1995)).[4]

In the case at hand, even assuming, *arguendo*, that plaintiff will ultimately prevail on the merits of its case[5], the Court concludes: 1) that Ajilon has not demonstrated that it will sustain irreparable harm during the litigation of this case; 2) that granting the

---

[4] The Court is also mindful that when a party seeks a mandatory injunction, i.e., to change the status quo rather than to preserve it, the moving party "must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hospital for Women Foundation, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F.Supp.2d 1, 4 (D.D.C. 1997).

[5] Plaintiff's likelihood of success, however, is by no means a foregone conclusion. Defendants vigorously contest the likelihood of plaintiff's success on the merits of its case. First, defendants argue that Ajilon's customer information cannot be considered a trade secret because that information consists largely of contact information which is publicly available and "can be found easily in Martindale-Hubbell, the phone book, or on the internet." Def.'s Opp., p. 13. Although defendants concede that customer lists may be entitled to trade secret protection if they contain confidential information, they contend that no such information is involved in this case.
    Additionally, defendants argue that the restrictive covenants in the defendants' employment contracts are not enforceable under New Jersey law because they unreasonably restrict the defendants' ability to work. According to the defendants, a restrictive covenant under New Jersey law is reasonable only if the employer can show that the restraint is necessary to protect its legitimate interests and does not cause an undue hardship. Although defendants point out that the lessening of competition is not a legitimate interest, they argue that even if Ajilon's interests were legitimate, enforcement of the covenants would impose an undue hardship on the defendants insofar as it would prevent them from working in the staffing industry in Washington D.C. for a year. Accordingly, the Court concludes that there are genuine issues of law and fact that will need to be decided when the Court turns to the merits of this case at a later time.

injunction would impose a significant hardship on the defendants; and 3) that the public interest would not be furthered by granting the injunction. Accordingly, the Court will DENY plaintiff's motion for injunctive relief.

## B. IRREPARABLE HARM

The concept of irreparable harm does not readily lend itself to definition. However, as our Circuit Court has indicated: "courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C.Cir. 2006). First, the injury must be both "certain and great" and "actual not theoretical." *Wisconsin Gas,* 758 F.2d at 674; *see also Equal Rights Center v. Post Properties, Inc.,* Slip Op., 2007 WL 2128232 (D.D.C. 2007); *Carabillo v. ULLICO Inc. Pension Plan and Trust*, 355 F.Supp.2d 49 (D.D.C. 2004). Indeed, injunctive relief will not be granted "against something merely feared as liable to occur at some indefinite time in the future." *Carabillo,* 355 F.Supp.2d at 54 (D.D.C. 2004)(quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 75 L.Ed. 602 (1931)). Thus, the movant must demonstrate that the injury is of such "imminence" that there is a clear and present need for equitable relief to prevent irreparable harm. *Wisconsin Gas*, 758 F.2d at 674.

Second, economic loss does not, in and of itself, constitute irreparable harm. *Id.* "Mere injuries, however substantial, in terms of money, time and energy necessarily

expended in the absence of a stay are not enough." *Id.* Moreover, "the possibility that adequate compensatory or other corrective relief will be available in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id.* Although recoverable monetary loss may constitute irreparable harm in some cases, it is only where the loss threatens the very existence of the movant's business. *Id.*

In the case at hand, Ajilon has alleged that the defendants have made use of client lists and client relationships developed at Ajilon to divert its clients to Solomon-Page. However, even assuming this allegation were true, which defendants vigorously contest due to Mr. Kubicki's pre-existing relationship with Crowell & Moring, Ajilon's damages are, nonetheless, limited to lost revenues. Indeed, Ajilon's Chief Operating Officer, William DeMario has quantified plaintiff's losses as $300,000 in total to date and at least $250,000 in lost revenue per month. DeMario Decl. ¶ 47-48. Given the size and prominence of Ajilon and its parent corporation[6], there is no reason to believe that Ajilon's alleged loss of revenue threatens the company's ability to stay in business. Although Ajilon baldy asserts that it faces more than a simple economic loss, it has failed to articulate precisely what that loss might be. Accordingly, the Court finds that plaintiff has failed to demonstrate a substantial likelihood of irreparable injury.

---

[6] Ajilon is a part of the Adecco Group, one of the world's largest human resource solution providers. Demario Decl. ¶ 5. Adecco has more than 30,000 employees and enjoyed gross revenues of $26 billion in 2006. Mosier Supp. Decl. Ex. A, p. 2, 86.

**C. INJURY TO THE DEFENDANTS**

Conversely, although the Court finds little danger of irreparable harm to the plaintiffs, the grant of the preliminary injunction sought by Ajilon will undoubtedly result in a considerable hardship to each of the defendants. First, plaintiffs seek to enjoin the defendants from working together at Solomon-Page[7], a requirement that would effectively require them to resign from that company. If not it would, at a minimum, impose a significant hardship on the defendants and Solomon-Page as the defendants have worked together in the past, have complimentary skills and apparently compose a self contained unit at Solomon-Page.

Second, the plaintiffs seek to enjoin each defendant from soliciting any business from three particular law firms in Washington, D.C.. Given the finite number of law firms in the District of Columbia that hire contract attorneys, and that the defendants, particularly Mr. Kubicki, have preexisting and/or ongoing relationships with these firms, barring the defendants from soliciting business from these firms would undoubtedly interfere with the conduct of the defendants' and Solomon-Page's business.

**D. PUBLIC INTEREST**

Finally, the Court finds that the public interest would not be furthered by granting plaintiff's motion for a preliminary injunction. Although plaintiff argues that the public

---

[7] Moreover, plaintiffs seek to enjoin the defendants from communicating or even socializing with each other during the pendency of this litigation. Indeed, plaintiffs seek to bar the defendants from so much as gathering "for drinks after work." Transcript, 16:11.

"has a deeply rooted interest in protecting...confidential information" and preventing "commercial piracy," Plaint.'s Mot. for a Prelim. Injunct., p. 7, there is no reason why the extraordinary relief of a preliminary injunction is necessary to provide this protection to what is essentially non-confidential information in this case. Moreover, the Court fails to see how the public interest would be served by restricting the defendants from working or socializing together and barring them from approaching certain potential customers. Accordingly, the Court concludes, the public interest would not be furthered by the imposition of a preliminary injunction.

### III. CONCLUSION

Therefore, for all of the reasons noted above, the Court finds that there has been no showing of irreparable harm to the plaintiff, that granting the preliminary injunction would impose a significant hardship on the defendants and that the public interest weighs against granting the motion. Accordingly, plaintiff's motion for a preliminary injunction is DENIED.

_____
RICHARD J. LEON
United States District Judge