## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AJILON PROFESSIONAL STAFFING, LLC | * | |
| Park 80 West Plaza II, 9th Floor | * | |
| Saddle Brook, NJ 07663 | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Action No. 1:07-CV-01281-RJL |
| | * | |
| JOSHUA KUBICKI | * | |
| 619 Gist Avenue | | |
| Silver Spring, MD 20910 | * | |
| | | |
| and | * | |
| | | |
| KIMBERLY DANOWSKI | * | |
| 702 Linden Grove Place, Apt. 302 | | |
| Odenton, MD 21113 | * | |
| | | |
| and | * | |
| | | |
| JON POMYKALA | * | |
| 1240 North Rolfe Street | | |
| Arlington, VA 22201 | * | |
| | | |
| and | * | |
| | | |
| SOLOMON-PAGE GROUP, LLC | * | |
| 1140 Avenue of the Americas, 21st Floor | | |
| New York, NY 10036 | * | |
| | | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*

## <u>AMENDED COMPLAINT</u>

Ajilon Professional Staffing, LLC ("Ajilon"), by its undersigned attorney,

hereby brings the following Amended Complaint against Defendants Joshua Kubicki

("Kubicki"), Kimberly Danowski ("Danowski"), Jon Pomykala ("Pomykala"), and Solomon-Page Group, LLC ("SPG") for (i) violation of the District of Columbia's Uniform Trade Secret Protection Act, D.C. Code § 48-501 *et seq.*; (ii) breach of contract; (iii) tortious interference with business relations; (iv) tortious interference with contractual relations; (v) breach of fiduciary duty; (vi) breach of duty of loyalty; (vii) civil conspiracy; (viii) unfair competition; (ix) unjust enrichment; (x) punitive damages; and (xi) injunctive relief and in support thereof, avers as follows:

## THE PARTIES

1.     Ajilon is a Delaware limited liability company that maintains its principal place of business at Park 80 West Plaza II, 9th Floor, Saddle Brook, New Jersey 07663. Ajilon regularly transacts business in the District of Columbia.

2.     Kubicki is a former Ajilon employee, who is currently employed by SPG. Upon information and belief, Kubicki presently resides in Maryland and is a citizen of that state.

3.     Danowski is a former Ajilon employee, who is currently employed by SPG. Upon information and belief, Danowski presently resides in Maryland and is a citizen of that state.

4.     Pomykala is a former Ajilon employee, who is currently employed by SPG. Upon information and belief, Pomykala presently resides in Virginia and is a citizen of that state.

5.      Solomon-Page Group is a Delaware corporation that maintains its principal place of business at 1140 Avenue of the Americas, 21st Floor, New York, New York 10036.

## JURISDICTION AND VENUE

6.      Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332.  This case involves a dispute between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Ajilon's claims arise out of tortious actions by Defendants within the District of Columbia, which caused harm to Ajilon in the District of Columbia.

7.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a)(2).

## FACTS

### Ajilon

8.      Ajilon is engaged in the legal staffing industry, and primarily focuses on providing contract attorneys on a temporary or permanent basis to law firms with offices throughout the United States.

9.      The legal staffing industry is highly competitive.  Ajilon invests a great deal of time and money in cultivating client contacts and developing professional relationships that rely upon mutual trust.  For this reason, all of Ajilon's contract attorneys must sign an Employment Agreement.  *See* Exhibit A.   The

Employment Agreement contains provisions for the protection of its confidential trade secret information and a covenant not to compete for a finite period of time.  *See id.*

### Kubicki

10.     Kubicki became an Ajilon employee on April 22, 2004 and signed the standard Employment Agreement on the same date.  A true and correct copy of Kubicki's Employment Agreement is attached as Exhibit B hereto.  He recruited business for Ajilon with the District of Columbia offices of various law firms through June of 2007.

11.     Kubicki acknowledged in his Employment Agreement that information regarding Ajilon and its clients was confidential and proprietary to Ajilon, and that maintaining the secrecy of these matters was of the utmost importance to the continued success of Ajilon in the legal staffing field.  Kubicki's Employment Agreement provided:

> The Employee recognizes and acknowledges that he/she has access to the list of *Employer's clients and applicants…. The above constitutes the Employer's "Confidential Information," which is a valuable, special and unique asset of the Employer's business.*
>
> *The Employee will not, during or after the term of his/her employment, use for his/her own purposes such list of the Employer's clients and applicants...*  In addition, the Employee will not disclose the above list…to any person, member of his family, firm, corporation, association, or other entity, for any reason or purpose whatsoever….
>
> In the event of a breach or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from the following:
>
> > A.     Disclosing, in whole or in part, the list of the Employer's clients…; or

4

> B.     *Rendering any services to any person,... , firm,
>         corporation, association, or other entity to whom such
>         list...ha[s] been disclosed, in whole or in part, or [is]
>         threatened to be disclosed.*

Exhibit B at pages 2-3 (emphasis added.)

12.     Kubicki's Employment Agreement also provides that, as Ajilon had expended a great deal of time and energy recruiting its employees, for a period of one (1) year after his termination from Ajilon, Kubicki would not act on behalf of another entity or firm to solicit Ajilon's employees.   The Employment Agreement explicitly stated:

> Employee agrees that Employer has invested substantial time and effort in assembling its staff of regular personnel as well as its pool of temporary employees.  *During and for a period of one year immediately following the termination of employment with Employer, Employee shall not directly or indirectly solicit Employer's regular or temporary employees for employment with any person or firm other than for Employer*, except in connection with permanent placements made in the proper course of Employee's employment with Employer.

Exhibit B at page 3 (emphasis added.)

13.     Kubicki further agreed that Ajilon had an interest in protecting its relationship with clients, and as such, upon his termination with Ajilon, he would not "directly or indirectly solicit" Ajilon's clients or applicants for a period of one (1) year. Exhibit B at page 3.   Paragraph 10 of the Employment Agreement states, in part:

> *For a period of one year immediately following the termination of employment with Employer, Employee shall not directly or indirectly solicit Employer's customers* or Employer's applicants for temporary employee assignments or permanent employee placements.  This shall apply to all customers and applicants known to Employee to be Employer's, to those that have applied or done business with Employer within one year before Employee's termination of employment as well as those prospective customers and from whom Employee solicited business while in the employ of Employer.

Exhibit B at page 3 (emphasis added.)

## Danowski

14.     Danowski became an Ajilon employee on August 15, 2005 and signed the standard Employment Agreement on the same date.  A true and correct copy of Danowski's Employment Agreement is attached as Exhibit C hereto.

15.     Danowski acknowledged in her Employment Agreement that information regarding Ajilon and its clients was confidential and proprietary to Ajilon, and that maintaining the secrecy of these matters was of the utmost importance to the continued success of Ajilon in the legal staffing field.  *See* Exhibit C at pages 3-4.

16.     The Employment Agreement that Danowski signed explicitly prohibited engaging in "any competitive activities" for a period of one (1) year within thirty-five (35) miles from the office in which she worked over the previous twelve (12) month period.  Exhibit C at page 4.  The Employment Agreement defined "competitive activities" as:

> Directly or indirectly owning, managing, operating, controlling, participating in, being employed by consulting, advising or being connected with a similar Staffing Service.
>
> A Staffing Service is defined as a person or entity engaged in the recruitment of individuals for positions of temporary or permanent employment with other individuals or entities…. For employees with responsibilities relating to the Employer's Ajilon legal line of business, a similar Staffing Service shall be defined as a Staffing Service that places legal services personnel including but not limited to attorneys, paralegals, legal secretaries, legal assistants and compliance officers.

Exhibit C at page 4.

**Pomykala**

17.     Pomykala became an Ajilon employee on October 28, 2005 and signed the standard Employment Agreement on the same date.  This Agreement was identical in all material respects to that signed by Danowski.  A true and correct copy of Pomykala's Employment Agreement is attached as Exhibit D hereto.

18.     Pomykala acknowledged in his Employment Agreement that information regarding Ajilon and its clients was confidential and proprietary to Ajilon, and that maintaining the secrecy of these matters was of the utmost importance to the continued success of Ajilon in the legal staffing field.  *See*  Exhibit D at pages 3-4.

19.     Further, the Employment Agreement that Pomykala signed explicitly prohibited engaging in "any competitive activities" for a period of one (1) year within thirty-five (35) miles from the office in which for he worked for Ajilon over the previous twelve (12) month period.   Exhibit D at page 4.   The Employment Agreement defined "competitive activities" as:

> Directly or indirectly owning, managing, operating, controlling, participating in, being employed by consulting, advising or being connected with a similar Staffing Service.
>
> A Staffing Service is defined as a person or entity engaged in the recruitment of individuals for positions of temporary or permanent employment with other individuals or entities…. For employees with responsibilities relating to the Employer's Ajilon legal line of business, a similar Staffing Service shall be defined as a Staffing Service that places legal services personnel including but not limited to attorneys, paralegals, legal secretaries, legal assistants and compliance officers.

Exhibit D at page 4.

**Solomon-Page Group**

20.    Solomon-Page Group ("SPG) is involved in the business of recruiting and providing legal personnel on a temporary or permanent basis to clients throughout the country.  Solomon-Page Group competes directly with Ajilon for the provision of legal staffing services in those geographic areas where Ajilon operates, including Washington, D.C.

21.    Upon information and belief, SPG did not have a notable presence in the Washington, D.C. legal staffing market prior to late June 2007, when it began employing Kubicki, Danowski and Pomykala.

**The Misconduct**

22.    In April 2007, SPG began recruiting Kubicki to work in its legal staffing office in the Washington, D.C. area.  SPG was aware that all Ajilon employees have signed confidentiality agreements containing restrictive covenants.

23.    In furtherance of its solicitation, SPG arranged for Kubicki to travel to New York, at SPG's expense, to meet with SPG executives on at least three occasions.  On Wednesday, April 4, 2007, while still employed by Ajilon, Kubicki traveled to New York and met with Lloyd Solomon ("Solomon"), the Chief Executive Officer of SPG.  On Thursday, April 19, 2007, while still employed by Ajilon, Kubicki again traveled to New York – at the expense of SPG – and stayed overnight to meet with executives from SPG.  Kubicki traveled to New York to meet with Solomon again on Tuesday, May 8, 2007.

24.     In May 2007, Kubicki shared with SPG a detailed set of documents, which included a compilation of the quarterly revenue he generated for Ajilon in 2005 and 2006, a specific list of demands that included SPG hiring Defendants Danowski and Pomykala, and a confidential business plan that he had prepared during his tenure at Ajilon, at the direction of his supervisor at Ajilon.  This document was clearly marked "Confidential."

25.     In his negotiations with SPG, Kubicki expressed the need to bring two "invaluable" and "unmatched" Ajilon employees, who comprised his professional team at Ajilon, with him to SPG: Defendants Danowski and Pomykala.  SPG agreed to these terms and openly sought to employ all three Defendants, allowing Kubicki to serve as the contact and negotiator for Danowski and Pomykala.  These three employees were hired by SPG to work as a group, performing the same functions, and drawing upon the information including written or electronically stored confidential information they had acquired as Ajilon employees.

26.     Kubicki also expressed the need for SPG to acquire office space to house contract attorneys, which it previously did not possess.  On June 1, 2007, Solomon agreed to seek out this space immediately, in anticipation of Defendants' employment and diversion of business from Ajilon to SPG.  After meeting with SPG on Friday, June 15, 2007, Kubicki became directly involved in acquiring leased office space for SPG while still employed by Ajilon.  During the workday on Tuesday, June 19, 2007 – before Kubicki resigned or even gave notice – Kubicki spoke with a leasing agent on behalf of SPG.

27.     Kubicki promised SPG that he would transfer the business of Ajilon clients to SPG.  He referred to pipeline work that he knew about expressly because of his position at Ajilon and promised that he would bring this work to SPG. Specifically, while working for Ajilon, on June 19, 2007, Kubicki e-mailed Solomon to inform him that one of Ajilon's clients would need 50 to 100 contract attorneys in the next two weeks for a project that would last for two to three months.  Kubicki advised SPG to promptly seek office space to house this and future projects.  If Kubicki had not diverted this project to SPG, Ajilon would have been responsible for staffing this project.

28.     As SPG was soliciting Defendants, Kubicki anticipated that he would be sued for directly violating the terms of his employment agreement and told SPG that it should be prepared for this event.  Notwithstanding its conscious awareness that its conduct interfered with Ajilon's legitimate contractual, statutory and common law rights, SPG continued recruiting and offered positions to Kubicki, Danowski and Pomykala.

29.     After agreeing to terms of employment with SPG, Kubicki resigned from his position with Ajilon on or about June 22, 2007, and promptly began working for SPG.  Danowski and Pomykala quickly followed suit, resigning on June 29, 2007 and beginning to work for SPG within days.  This activity was in direct violation of the explicit non-solicitation and non-compete provisions of their respective Employment Agreements, discussed *supra*, of which SPG was aware.

30.     SPG actively recruited Kubicki, Danowski and Pomykala to resign their employment with Ajilon and to seek out positions with SPG.  Kubicki – as an agent for SPG and while still a full-time management employee with Ajilon – recruited Pomykala and Danowski to resign their employment with Ajilon and take positions with SPG.   SPG subsequently hired Danowski and Pomykala.  This activity was in direct violation of Kubicki's, Pomykala's and Danowski's explicit contractual obligations to Ajilon.  It was also in violation of Kubicki's duty of loyalty to Ajilon.  Further, both SPG and Kubicki engaged in tortuous conduct in soliciting Pomykala and Danowski.

31.     As an employee of Ajilon, Kubicki had regularly solicited business from the District of Columbia offices of several large national law firms, including Crowell and Moring ("Crowell") and Mayer Brown Rowe and Maw ("Mayer Brown").  The relationships that Ajilon had with Crowell and Mayer Brown were extremely important to Ajilon's D.C. operation and were very profitable; in fact, Crowell and Mayer Brown were among Ajilon's biggest clients.  Up to and including his date of resignation, Kubicki worked to solicit projects at Crowell, Mayer Brown and other firms.  In breach of his Employment Agreement, Kubicki solicited business with Crowell, Mayer Brown and other Ajilon clients, on behalf of SPG.

32.     As employees of Ajilon, Danowski and Pomykala supported Kubicki's solicitation and organization of Ajilon-staffed projects in the District of Columbia offices of a number of law firms, including Crowell and Mayer Brown.  In breach of their respective Employment Agreements, immediately after terminating their employment relationships with Ajilon, Danowski and Pomykala became employed by

SPG and began working on the projects Kubicki was soliciting for SPG with Ajilon's clients.

33.     On information and belief, Ajilon is not aware of any preexisting relationship between the Ajilon clients from whom Defendants are soliciting business, including Crowell and Mayer Brown, and SPG.  In fact, SPG lacked nearly any market presence in the District of Columbia legal staffing industry until Kubicki began working for SPG in late June of 2007.  Ajilon believes and therefore avers that Kubicki, Danowski and Pomykala conspired with SPG to wrongfully convert Ajilon's client information and to divert Ajilon opportunities to SPG, both before and after leaving Ajilon's employ.

34.     Kubicki obtained commitments on projects with Crowell and Mayer Brown – extremely important clients with whom Ajilon had lucrative relationships – on behalf of SPG even before resigning from his position at Ajilon. SPG, through one of its principals, Solomon, was aware of and participated in these actions while Kubicki was still employed at Ajilon.

35.     When Kubicki secured these projects with Crowell and Mayer Brown for SPG, he wrongfully provided Pomykala and Danowski with positions working on staffing and organizing projects.  Widely distributed advertisements list Pomykala as the person for contract attorneys to contact if they are interested in working for SPG on document review projects, which include the Crowell and Mayer Brown projects.  Danowski is also working to staff, organize and administer the Crowell and Mayer Brown projects for SPG.  Therefore, Kubicki, Danowski and

Pomykala are engaged in activity which directly violates the terms of their Employment Agreements on behalf of SPG, and SPG and Kubicki are committing business torts that injure Ajilon.

      36.    The actions include:

(a) Defendants' arranging for Crowell to hire 42 Ajilon contract attorneys as direct hires of Crowell at a heavily discounted rate in June 2007;

(b) Kubicki's negotiating an agreement with Crowell on behalf of SPG for SPG to provide temporary office space and managing/supervisory attorneys to office and oversee Crowell's contract attorneys;

(c) Kubicki's negotiating for temporary office space on behalf of SPG during regular work hours; and

(d) Kubicki's offering employment to Danowski and Pomykala at the direction of SPG for the purpose of working, _inter alia_, on the Crowell project described above.

      37.    Solomon-Page Group is now profiting from the projects Kubicki has diverted from Ajilon to SPG.  Solomon-Page Group is also using Ajilon's former employees to service these projects and solicit business for SPG from Ajilon's clients. Ajilon would almost certainly have been able to continue to capture and service these projects but for the individual and collective actions of Defendants.

38.     Kubicki and SPG could not and would not have had the information necessary to obtain the Crowell and Mayer Brown projects or hire Danowski or Pomykala without Kubicki disclosing to SPG confidential information and trade secrets belonging to Ajilon.  When they began working for SPG, Kubicki, Danowski and Pomykala possessed a number of Ajilon's confidential business records and client information, which they have converted and will continue to convert to SPG's benefit. This includes a lengthy, detailed contact list for all of Ajilon's clients and targeted prospective clients, and contact information, states of bar admission and social security numbers for many of Ajilon's most valuable contract attorneys.  The records that Defendants took from Ajilon and have converted to SPG's benefit include comprehensive information that Ajilon expended a great deal of time and energy to obtain.  Most important among this information are records of precisely who should be contacted within each law firm in order to garner business – something that is not merely publicly available.  In addition, Defendants possess pertinent information regarding the levels of experience firms require contract attorneys to possess, the policies and procedures to which contract attorneys must adhere, how the legal staffing projects are administered, and other firm-specific matters.

39.     Ajilon believes and therefore avers that Defendants are prepared to engage in, engaged in, and continue to engage in, *inter alia*, the following acts:

> (a)     Converting for their own use, information contained in the confidential business records of Ajilon, specifically including contact information for Ajilon's clients, described *supra*;

> (b)     Soliciting Ajilon employees to leave Ajilon, in violation of the express terms of their Employment Agreements;

(c)    Breaching the terms of their reasonable, geographically-
and time-limited non-compete agreements; and

(d)    Other such acts contrary to the terms, conditions and
provisions of their Employment Agreements and their duty
of loyalty to Ajilon.

40.    Defendants' conduct was and is in furtherance of a scheme to
obtain and convert to their use and gain the information contained in the records of
Ajilon, including but not limited to Ajilon's client names, addresses, telephone numbers
and contact information, and to convert the Ajilon business model for SPG's benefit.
SPG and Kubicki also wrongfully used confidential information to selectively lure
Pomykala and Danowski away from their employment at Ajilon.

41.    Ajilon believes and, therefore, avers that:

(a)    Defendants have possession or control of confidential
Ajilon client information, Ajilon proprietary information,
and Ajilon trade secrets;

(b)    Defendants have used and will continue to use this
information to solicit Ajilon clients and to divert the
business of Ajilon clients from Ajilon to SPG; and

(c)    Defendants will otherwise continue to engage in acts
constituting a breach of the terms of their Employment
Agreements, a breach of their duty of loyalty, and other
tortious conduct, including conversion of trade secrets and
confidential information, and unfair competition.

## COUNT I

## VIOLATION OF DISTRICT OF COLUMBIA UNIFORM

## TRADE SECRET PROTECTION ACT

## D.C. Code § 48-501 *et seq.*

## (AGAINST ALL DEFENDANTS)

42.    The allegations of Paragraphs 1 through 41 are incorporated herein by reference with the same force and effect as if set forth in full below.

43.    Ajilon's clients' names, addresses, telephone numbers, and contact information, which constitute trade secrets subject to protection under the District of Columbia Uniform Trade Secret Protection Act, D.C. Code § 48-501 *et seq.*  Ajilon has devoted substantial time, effort and money to acquiring, developing and protecting its client base.

44.    Ajilon has taken more than adequate measures under the circumstances to protect the secrecy of this information, such as requiring its employees to sign Employment Agreements, as described *supra*.

45.    Ajilon believes, and therefore avers, that Defendants are presently using Ajilon's confidential and trade secret information in furtherance of their employment with SPG and in direct violation of their binding contractual agreements not to do so.  Ajilon believes and therefore avers that SPG is similarly using Ajilon's confidential and trade secret information.

46.    At the time Defendants misappropriated Ajilon's trade secrets for their own benefit and to the detriment of Ajilon, Defendants acted willfully and

maliciously because they knew or should have known that they were using Ajilon's trade secrets for improper purposes.

47.    The foregoing conduct constitutes a misappropriation and misuse of Ajilon's confidential, trade secret information, by Defendants, in violation of District of Columbia law, which has resulted in Ajilon being damaged. Ajilon seeks judgment against Defendants for these wrongful actions in an amount to be determined at trial.

48.    As a consequence of the foregoing, Ajilon has suffered, and will continue to suffer, irreparable harm and loss. Unless enjoined as requested herein, Defendants will persist in their wrongful and unlawful activities, and Ajilon will continue to be irreparably harmed.

## COUNT II

## BREACH OF CONTRACT

## (AGAINST KUBICKI, DANOWSKI AND POMYKALA)

49.    The allegations of Paragraphs 1 through 48 are incorporated herein by reference with the same force and effect as if set forth in full below.

50.    Defendants Kubicki, Danowski and Pomykala have violated the terms of their Employment Agreements with Ajilon. Specifically, Kubicki sought out and garnered business from at least two of Ajilon's clients for one of Ajilon's competitors. *See* Exhibit B at page 3. That he was willing to breach his Employment Agreement indicates the likelihood that he will breach it again by soliciting work for SPG from these and other Ajilon clients. Danowski and Pomykala began working for SPG, a

direct competitor of Ajilon, and have unlawfully staffed projects with Ajilon's clients through SPG.

51.    Upon information and belief, Defendants are continuing to violate their contractual obligations under their Employment Agreements.

52.    As a consequence of the foregoing, Ajilon has suffered irreparable harm and loss.  Unless enjoined as requested herein, Kubicki will persist in his wrongful and unlawful activities in soliciting Ajilon's clients, Danowski and Pomykala will continue to be employed by a direct competitor, and Ajilon will continue to be irreparably harmed.

53.    In addition, Ajilon has been and continues to be damaged by Defendants' actions, and Ajilon seeks judgment against Defendants in an amount to be determined at trial.

## COUNT III

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

## (AGAINST ALL DEFENDANTS)

54.    The allegations of Paragraphs 1 through 53 are incorporated herein by reference with the same force and effect as if set forth in full below.

55.    Ajilon has valid and continuing present and prospective business relationships with its clients.

56.    Defendants knew and continue to know of the existence of these valid business relationships, and are now in possession of Ajilon's customer list.  They

also have used, and continue to use, detailed confidential information on specific, existing and upcoming projects for Ajilon clients and information on contract attorneys.

57.    Defendants have used this customer list to solicit various Ajilon clients to terminate or reduce their prospective business relationships with Ajilon. Defendants have done so with the specific intent to harm these existing business relationships, and to erode Ajilon's goodwill with its clients.

58.    Defendants' actions were and are without privilege or justification, and were engaged in through improper means, namely misappropriation of Ajilon's confidential, proprietary and trade secret client lists.

59.    As a result of Defendants' conduct, Ajilon's goodwill with its clients has been diminished, and Defendants have diverted – and will divert – future business to SPG that would have gone to Ajilon.

60.    The foregoing conduct by Defendants constitutes a tortious interference with Ajilon's business relationships with its clients.

61.    As a consequence of the foregoing, Ajilon has suffered and will continue to suffer irreparable harm and loss in the form of lost business and diminished goodwill with its clients.  Unless enjoined as requested herein, Defendants will persist in their wrongful and unlawful activities, and Ajilon will be irreparably harmed.

62.    In addition, Ajilon has been and continues to be damaged by Defendants' actions, and Ajilon seeks judgment against Defendants in an amount to be determined at trial.

## COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

## (AGAINST KUBICKI AND SPG)

63.     The allegations of Paragraphs 1 through 62 are incorporated herein by reference with the same force and effect as if set forth in full below.

64.     Kubicki, Pomykala and Danowski owed contractual obligations to Ajilon prior to and following their resignations, including non-recruitment, non-solicitation, and confidentiality obligations.  *See* Exhibits C and D.

65.     Solomon-Page Group and Kubicki knew, and continue to know, of the existence of these valid contractual obligations.

66.     Despite this knowledge, SPG induced and continues to induce and incent Kubicki, Pomykala and Danowski to breach their contractual obligations to Ajilon. Solomon-Page Group did and continues to do this with the specific intent to harm Ajilon and interfere with the contractual relationships between Ajilon and Kubicki, Danowski and Pomykala. SPG has accepted the benefits of Kubicki, Pomykala and Danowski's breaches by using them to garner business for SPG, which business would otherwise have been enjoyed by Ajilon.

67.     Kubicki induced and continues to induce and incent Pomykala and Danowski to breach their contractual obligations to Ajilon.  Kubicki did this and continues to do this with the specific intent to harm Ajilon and interfere with the contractual relationship between Ajilon and Pomykala and Danowski.  Kubicki has

accepted the benefits of Pomykala's and Danowski's breaches by using them to help garner business for SPG for which he is then remunerated by SPG. Kubicki is personally reaping the financial benefits of his wrongful actions that have harmed Ajilon.

68.     Solomon-Page Group and Kubicki's actions were and are without privilege or justification.

69.     As a result of SPG's conduct, Kubicki, Pomykala and Danowski breached their contractual obligations to Ajilon and continue to do so in the manner described above, thereby causing irreparable harm to Ajilon.

70.     As a result of Kubicki's conduct, Pomykala and Danowski breached their contractual obligations to Ajilon and continue to do so in the manner described above, thereby causing irreparable harm to Ajilon.

71.     The foregoing conduct constitutes tortious interference by SPG with Ajilon's contractual relationships with Kubicki, Danowski and Pomykala.

72.     The foregoing conduct constitutes tortious interference by SPG with Ajilon's contractual relationships with clients with which Ajilon has conducted business for many years.

73.     The foregoing conduct constitutes tortious interference by Kubicki with Ajilon's contractual relationships with Pomykala and Danowski.

74.     As a consequence of the foregoing, Ajilon has suffered and will continue to suffer irreparable harm and loss. Unless enjoined as requested herein, SPG

and Kubicki will persist in their wrongful and unlawful activities, and Ajilon will continue to be irreparably harmed.

75.    In addition, Ajilon has been and continues to be damaged by Defendants' actions, and Ajilon seeks judgment against Defendants in an amount to be determined at trial.

## COUNTS V AND VI

## BREACH OF FIDUCIARY DUTY AND BREACH OF DUTY OF LOYALTY

## (AGAINST KUBICKI, DANOWSKI AND POMYKALA)

76.    The allegations of Paragraphs 1 through 75 are incorporated herein by reference with the same force and effect as if set forth in full below.

77.    As employees of Ajilon, Defendants Kubicki, Danowski and Pomykala owed a duty of loyalty to Ajilon to act in the best interests of Ajilon, to use their best efforts on behalf of Ajilon, and to avoid any conflict between the interests of Ajilon and their own self-interest.

78.    Defendant Kubicki, while still working for Ajilon as a management employee, communicated with SPG, Crowell, Mayer Brown, Danowski and Pomykala, and with New Market (a commercial office building management company) for the express purpose of obtaining Crowell and Mayer Brown's business for SPG, providing office space therefor, and providing the services of Pomykala and Danowski to fulfill the law firm clients' requirements.  All of these actions were in direct competition with Ajilon; constituted work that Kubicki was being paid to do by Ajilon for it and not for SPG; injured Ajilon's relationships with and diverted business opportunities from

Crowell and Mayer; and were undertaken clandestinely and with knowledge that they were wrongful.

79.     Kubicki was aware that his actions were not only wrongful and injurious to Ajilon, but that they were outrageous that they were likely to provoke a lawsuit, and he so advised Solomon at SPG.

80.     As described fully above, Defendants violated the common law duty of loyalty and the fiduciary duty arising under their relationships with Ajilon in that, while still employed by Ajilon, they misappropriated Ajilon's confidential trade secret information, and provided it to SPG, the competitor for whom they promptly began working.

81.     As fully described above, Defendants violated, etc. in that they intentionally misappropriated Ajilon's business relationships with its clients and intentionally misappropriated revenues and profits that Ajilon would otherwise have received from those clients.

82.     As a consequence of the foregoing, Ajilon has suffered and will continue to suffer irreparable loss, as well as damages in an amount to be determined at trial.

## COUNT VII

## CIVIL CONSPIRACY

## (AGAINST ALL DEFENDANTS)

83.    The allegations of Paragraphs 1 through 82 are incorporated herein by reference with the same force and effect as if set forth in full below.

84.    Defendants formed an agreement and jointly participated in unlawful acts, including violating Ajilon's contractual, statutory and common law rights, as described *supra*.

85.    The foregoing conduct of Defendants was performed with the intent to injure Ajilon, and was without justification or privilege.

86.    Defendants engaged in overt unlawful acts and conduct that violated Ajilon's contractual and common law rights.  This caused actual harm to Ajilon.

87.    By virtue of the formation and operation of this conspiracy by Defendants, and as a consequence of the above described wrongful conduct and harm caused to Ajilon thereby, each Defendant as a participant in this conspiracy is liable as a joint tortfeasor for each and every one of the above-articulated acts committed by each Defendant/co-conspirator.

88.    As a consequence of the foregoing, Ajilon has suffered and will continue to suffer irreparable harm and loss.  Unless enjoined as requested herein,

Defendants will persist in their wrongful and unlawful activities, and Ajilon will continue to be irreparably harmed.

89.    In addition, Ajilon has been and continues to be damaged by Defendants' conduct and Ajilon seeks judgment against Defendants in an amount to be determined at trial.

## COUNT VIII

## UNFAIR COMPETITION

## (AGAINST ALL DEFENDANTS)

90.    The allegations of Paragraphs 1 through 89 are incorporated herein by reference with the same force and effect as if set forth in full below.

91.    The foregoing conduct of Defendants, including misappropriation and misuse of Ajilon's trade secrets and numerous breaches of contract, constitutes an unfair method of competition.

92.    As a consequence of the foregoing, Ajilon has suffered and will continue to suffer irreparable harm and loss.  Unless enjoined as requested herein, Defendants will persist in their wrongful and unlawful activities, and Ajilon will continue to be irreparably harmed.

93.    In addition, Ajilon has been and continues to be damaged by Defendants' conduct and Ajilon seeks judgment against Defendants in an amount to be determined at trial.

## COUNT IX

## UNJUST ENRICHMENT

## (AGAINST ALL DEFENDANTS)

94.     The allegations of Paragraphs 1 through 93 are incorporated herein by reference with the same force and effect as if set forth in full below.

95.     The foregoing conduct of Defendants has resulted in Defendants being unjustly enriched by possessing and utilizing Ajilon's confidential trade secret information and retaining the benefits of such wrongful conduct at the expense and to the detriment of Ajilon.

96.     The foregoing conduct has resulted in Defendants being unjustly enriched by misappropriating Ajilon's business relationships with its clients and intentionally misappropriating revenues and profits that Ajilon would otherwise have received from those clients.

97.     As a consequence of the foregoing, Ajilon has suffered, and will continue to suffer, irreparable harm and loss.  Unless enjoined as requested herein, Defendants will persist in their wrongful and unlawful activities, and Ajilon will continue to be irreparably harmed.

**COUNT X**

**PUNITIVE DAMAGES**

**(AGAINST DEFENDANTS SPG AND KUBICKI)**

98.     The allegations of Paragraphs 1 through 97 are incorporated herein by reference with the same force and effect as if set forth in full below.

99.     The tortious conduct of Defendants SPG and Kubicki as alleged hereinabove was outrageous, willful, wanton and malicious.  Defendants actively knew that they were violating Ajilon's rights; consciously and affirmatively concealed their wrongdoing; and they recognized the risk of being sued when it came to light.

100.     The wrongful conduct of Defendants SPG and Kubicki justifies an award of punitive damages.

101.     Plaintiff seeks punitive damages in addition to its other damages.

**COUNT XI**

**INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE**

**(AGAINST ALL DEFENDANTS)**

102.     The allegations of Paragraphs 1 through 101 are incorporated herein by reference with the same force and effect as if set forth in full below.

103.     Defendants' actions are causing ongoing irreparable injury to Ajilon.

104.     Ajilon is also entitled to the benefit of compliance with the reasonable terms of its employment agreements.

105.    Ajilon is further entitled to protection of its confidential information and trade secrets.

106.    Ajilon seeks a permanent injunction restraining Defendants from violating Ajilon's contractual, statutory and common law rights.

107.    Unless Defendants are temporarily and permanently enjoined from the foregoing conduct, Ajilon will be irreparably harmed by:

(a)    The disclosure of trade secrets, client lists, and other confidential information which are solely the property of Ajilon;

(b)    The loss of confidentiality of the information contained in Ajilon's records and of Ajilon's trade secrets, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c)    The threat to enforcement of reasonable contracts; and

(d)    Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

## PRAYER FOR RELIEF

WHEREFORE, Ajilon respectfully requests that this Court grant the following relief:

(a)    Issue preliminary and permanent injunctions of the type and in the form requested;

(b)    Award compensatory damages to Ajilon in an amount to be determined at trial;

(c)    Award attorneys' fees and costs of this action to Ajilon, in accordance with the terms of Defendants' Employment Agreements.

28

(d)     Award punitive damages in favor of Ajilon and against SPG and Kubicki in an amount to be determined at trial.

(e)     Award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable as of right.

Respectfully submitted,

Schnader Harrison Segal & Lewis LLP

By:     _____/s/_____

Benjamin W. Hahn (Bar No. 446270)
2001 Pennsylvania Ave. N.W., Suite 300
Washington, D.C. 20006-1825
Telephone: (202) 419-4242
Email: bhahn@schnader.com

Counsel for Plaintiff Ajilon Professional Staffing, LLC